## STEPHANIE W. SHEA ET AL. *v.* CHASE MANHATTAN BANK, N.A.
### (AC 20633)

Foti, Mihalakos and Daly, Js.

Argued March 30—officially released July 31, 2001

*Philip D. Russell*, with whom, on the brief, was *Roy S. Ward* and *Harold H. Dean*, for the appellant (named plaintiff).

*Joseph L. Clasen*, with whom, on the brief, were *Eric W. G. Dawson* and *Linda H. Kolodny*, for the appellee (defendant).

*Opinion*

MIHALAKOS, J. In this action for vexatious litigation, the plaintiff Stephanie W. Shea[1] appeals from the trial court's judgment in favor of the defendant, Chase Manhattan Bank, N.A. (Chase). On appeal, the plaintiff claims that (1) the trial court improperly failed to apply the doctrine of collateral estoppel with respect to the prior litigation between the parties, thereby requiring years of relitigation of the issues, (2) the judicial findings from the prior proceeding that did not go to probable cause were sufficiently firm to bar their relitigation, (3) relitigation of probable cause was barred by estoppel and common-law rules governing vexatious litigation claims, (4) the trial court improperly held that General Statutes § 52-568 changed the common law and allowed analysis of postinitiation issues, (5) the trial court improperly allowed Chase to use an "unclean hands" defense, (6) the trial court improperly held that Chase had a viable "advice of counsel" defense and (7) the trial court improperly failed to analyze whether Chase's prior claims under the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., were brought with probable cause. We do not agree. We find that our resolution of the plaintiff's advice of counsel claim is dispositive in this case and decline to address the other claims.

The record reveals the following facts. In 1988, the plaintiff was the director and president of Deltrade International, Ltd. (Deltrade), a sulfur trading company. The plaintiff owned no stock in Deltrade or in any related corporation. A total of 94.5 percent of Deltrade stock was owned by Antonino Castellett, and 5.5 percent was owned by Castellett's wife, through their own-

---

[1] Michael P. Shea, the husband of the plaintiff Stephanie W. Shea, also was a plaintiff in this action. Because only Stephanie W. Shea has appealed, we refer to her in this opinion as the plaintiff.

ership of Deltrade's parent company, Deltacorp, Inc. The plaintiff, on behalf of Deltrade, requested a $7.5 million secured line of credit from Chase. On October 7, 1988, the plaintiff executed a general security agreement on behalf of Deltrade. Also on that date, the plaintiff, on behalf of Deltrade, signed a continuing acceptance agreement with Chase that states in part that "[t]he undersigned represents and warrants that . . . (b) each such draft will finance a current shipment of goods . . . [and] (f) no other financing is or will be outstanding in respect of such transaction during the period from the date of such draft until maturity thereof . . . ." At the time that those documents were executed, Chase believed that Deltrade was as Delaware corporation and was the trading arm of the business, that it was engaged in the trading of sulfur, and had both assets and sulfur.

In reality, there was a second corporation known as Deltrade International, Ltd. (Deltrade Bermuda). The second entity was a Bermuda corporation and was the actual trading arm of the business. Deltrade, a Delaware corporation formed in 1988, was a shell corporation that had no assets, was never involved in trading sulfur and had no income. That information was never made known to Chase. The plaintiff signed the certified resolution for United States corporations, which was issued in connection with the continuing acceptance agreement, as secretary of "Deltrade International, Ltd., a U.S. corporation," a company that had neither assets nor income.

The plaintiff represented to Chase that there was a pending merger between Deltrade Bermuda and Deltrade and that, thereafter, Deltrade would be the trading entity. The plaintiff never informed Chase that the merger did not take place, and Chase, in turn, relied on the plaintiff's representations. There never was a

merger; however, Chase believed that one had occurred.

Between October 26, 1988, and March 9, 1989, Chase made a series of loans to Deltrade under the secured line of credit. Only one of those loans was ever repaid. The remaining seven unpaid loans, totaling more than $8 million, were never repaid. All Deltacorp and Deltrade entities went into bankruptcy.

Chase's in-house counsel, Lynne Barry, analyzed all the documents pertaining to the credit and loan transactions between Chase and Deltrade that involved the plaintiff. Chase hired the law firm Robinson & Cole LLP as outside counsel, and its attorneys also reviewed all the pertinent documents. In 1989, Chase commenced an action against the plaintiff, alleging fraud after both in-house and outside counsel had sufficient information to believe that the plaintiff had committed fraud by signing the various documents associated with the seven unpaid loan transactions when she knew (1) Deltrade had no inventory, (2) that for the seven financed transactions, the proceeds were paid by the purchaser to Deltrade prior to Chase's payment and (3) no security existed for any of the seven transactions. Both counsel were aware that the plaintiff had signed documents on behalf of a Delaware corporation, Deltrade, that had no assets and on behalf of a Bermuda corporation when the documents themselves indicated it was a United States based corporation. Chase alleged in the 1989 action that the plaintiff should be held personally responsible for activities she performed as an officer of Deltrade. Chase filed for and was granted an ex parte prejudgment attachment of the plaintiff's Connecticut home in the amount of $9 million. Chase alleged that it had been defrauded by the plaintiff in that (1) she misrepresented that a merger between Deltrade and Deltrade Bermuda had taken place, (2) in several transactions, there was no collateral for the loan from Chase

to Deltrade, (3) there were no matching purchases and sales of sulfur as promised, and (4) several of the sales had been financed by another bank resulting in double financing. Chase also alleged that the plaintiff had violated CUTPA.

The plaintiff thereafter filed a motion, pursuant to General Statutes § 52-278e (c),[2] to dissolve the attachment. The court, *Lewis, J.,* granted the plaintiff's motion, finding that no probable cause existed for any of Chase's allegations. That judgment was affirmed by this court. *Chase Manhattan Bank, N.A.* v. *Shea,* 24 Conn. App. 169, 586 A.2d 634, cert. denied, 218 Conn. 908, 588 A.2d 1384 (1991). On May 2, 1994, after four and one-half years of litigation and before going to trial, Chase withdrew its claims against the plaintiff.

In December, 1995, the plaintiff brought an action against Chase, alleging violations of § 52-568,[3] CUTPA, and seeking damages for intentional infliction of emotional distress and prima facie tort. The court, *Tierney, J.,* applied the test set forth in *DeLaurentis* v. *New Haven,* 220 Conn. 225, 597 A.2d 807 (1991), requiring that the plaintiff show that (1) the prior litigation was commenced by Chase, (2) the prior litigation ended in the plaintiff's favor and (3) Chase did not have probable cause for the prior litigation. The court found in favor of Chase, stating in its memorandum of decision that

---

[2] General Statutes § 52-278e (c) provides in relevant part: "The notice and claim form required by subsection (b) of this section shall contain (1) the name and address of any third person holding property . . . and (2) a statement of the procedure set out in subsection (d) of this section for requesting a hearing to move to dissolve or modify the prejudgment remedy."

[3] General Statutes § 52-568 provides: "Any person who commences and prosecutes any civil action or complaint against another, in his own name or the name of others, or asserts a defense to any civil action or complaint commenced and prosecuted by another (1) without probable cause, shall pay such other person double damages, or (2) without probable cause, and with a malicious intent unjustly to vex and trouble such other person, shall pay him treble damages."

although the prior litigation had been commenced by Chase and had ended in the plaintiff's favor, the plaintiff could not show that Chase lacked probable cause for its 1989 fraud and CUTPA claims. This appeal followed.

Although the plaintiff asserts numerous claims on appeal, we find dispositive of this matter our resolution of her claim that the court improperly decided that Chase had a viable "advice of counsel" defense. We do not agree with that claim.

The following additional facts, found by the court, are necessary to our resolution of the plaintiff's claim. Barry analyzed each of the documents in Chase's possession regarding the Deltrade transactions. Attorneys from Robinson & Cole LLP also analyzed each of the documents. Both counsel believed that the plaintiff had committed fraud by signing the various documents when she knew that no inventory existed as collateral and that the proceeds already had been paid by the purchaser. There was, therefore, no security for any of those transactions. Counsel also knew that the plaintiff had signed documents on behalf of a Delaware corporation that had no assets. They further knew that she had signed documents on behalf of a Bermuda corporation when the documents indicated that it was a United States based corporation.

Steven R. Humphrey of Robinson & Cole LLP advised Chase that it had a strong foundation for a civil fraud claim and that such a claim should be made. Barry extensively interviewed Chase's representatives in the Deltrade transactions and read Chase's entire file. Barry further researched Connecticut and New York law on the relevant legal issues. Humphrey also reached the conclusion that Chase had a viable civil fraud claim against the plaintiff and recommended that one be filed. Humphrey's associate, Katherine B. Larson, reached the same legal conclusion and gave the same advice. In

1994, after a cost-benefit analysis, Barry and Humphrey withdrew the 1989 action against the plaintiff, on the advice of Chase, because of the high costs of trial and the lack of assets available to collect on a judgment against the plaintiff.

"Advice of counsel is a complete defense to an action of . . . vexatious suit when it is shown that the defendant . . . instituted his civil action relying in good faith on such advice, given after a full and fair statement of all facts within his knowledge, or which he was charged with knowing. The fact that the attorney's advice was unsound or erroneous will not affect the result." *Vandersluis* v. *Weil,* 176 Conn. 353, 361, 407 A.2d 982 (1978).

The court in its memorandum of decision found in favor of Chase on its special defense that it relied on the advice of counsel, stating that "[t]he defendant has sustained its burden of proof in proving advice of counsel for both in-house and outside counsel. Both counsel had full knowledge of all the facts of this case. All counsel specifically advised Chase that it file a civil fraud action against Shea. The attorneys had the full cooperation [of] all the knowledgeable employees of Chase. They had all of Chase's documentation. Counsel was able to obtain information unknown to Chase from other suppliers and other lending institutions. It was reasonable for Chase to rely on advice from both in-house and outside counsel in this matter." We conclude that the court's holding was proper in light of the previously discussed facts.

We further conclude that the court properly found that Chase did, in fact, rely in good faith on the advice of its attorneys and that this advice was given after the attorneys' close review of all of the facts within Chase's knowledge or those with which it was charged with knowing. Because advice of counsel is a complete

defense to an action sounding in vexatious litigation, we decline to address the plaintiff's remaining claims.

The judgment is affirmed.

In this opinion the other judges concurred.