THEODORE A. VERSPYCK ET AL. *v.* MICHAEL J.
FRANCO ET AL.
(AC 23813)

Lavery, C. J., and Bishop and Peters, Js.

Argued December 2, 2003—officially released February 24, 2004

*John Wayne Fox*, with whom were *John J. Louizos* and, on the brief, *Patricia M. Gaug*, for the appellant (defendant Marilyn P. Altsheler).

*Louis Ciccarello*, for the appellees (plaintiffs).

*Opinion*

PETERS, J. General Statutes § 52-568 (1) permits a party to a civil action who has been wrongfully sued to recover double damages on the ground of vexatious litigation.[1] The trial court held that the plaintiffs met their burden of showing lack of probable cause for the initiation of the earlier litigation. The principal issue on appeal is whether the trial court properly rejected the

---

[1] General Statutes § 52-568 provides: "Any person who commences and prosecutes any civil action or complaint against another, in his own name or the name of others, or asserts a defense to any civil action or complaint commenced and prosecuted by another (1) without probable cause, shall pay such other person double damages, or (2) without probable cause, and with a malicious intent unjustly to vex and trouble such other person, shall pay him treble damages."

present defendant's special defense of reliance on the advice of counsel. We disagree with the court's holding. Accordingly, we reverse the judgment and direct the entry of judgment for the present defendant.

The plaintiffs, Theodore A. Verspyck and Patricia J. Verspyck, filed a two count complaint against the defendant Marilyn P. Altsheler.[2] The complaint alleged that the defendant had brought a federal action against them "without probable cause, and with a malicious intent unjustly to vex and trouble them." They sought damages for violation of subdivisions (1) and (2) of § 52-568.

The defendant had brought the federal action to contest the validity of a conveyance to the present plaintiffs of property located at 19 Valeview Road in Wilton. The issue she brought to the court was whether a deed of conveyance, signed by only one of two alleged cotrustees of an irrevocable trust, gave the plaintiffs good title to trust property. The United States District Court for the District of Connecticut, Squatrito, J., did not address the merits of this issue. It dismissed the defendant's complaint because the trust had not availed itself of the opportunity of recordation pursuant to General Statutes § 47-20.[3] The United States Court of Appeals for the Second Circuit affirmed summarily.

---

[2] The plaintiffs' action originally included three additional counts. The plaintiffs withdrew one count charging the defendant Marilyn P. Altsheler with slander of title and withdrew two counts charging her attorneys, Michael J. Franco and Tiziana M. Scaccia, with having improperly represented her in the federal action. Thus, Altsheler was the only defendant at trial. We refer to her in this opinion as the defendant.

[3] General Statutes § 47-20 provides in relevant part: "The word 'trustee' . . . following the name of the grantee in a duly executed and recorded instrument which conveys, transfers or assigns real estate or any interest therein, with or without the name of a cestui que trust or principal appearing and without any other language expressly limiting the powers, interest or estate of the grantee, do not, in the absence of a separate duly executed and recorded instrument defining the powers of the grantee, affect the right of the grantee to sell, mortgage or otherwise dispose of the real estate or interest therein in the same manner as if those words had not been used. . . ."

In response to the plaintiffs' state court action for vexatious litigation, the defendant filed an answer and special defenses. The centerpiece of her defense was that she did not lack probable cause to bring the federal action because she had relied in good faith on the advice of her attorneys.[4]

After a court trial, the court rendered judgment in favor of the plaintiffs and awarded them damages of $142,000.[5] Although the court held that the plaintiffs had not established malicious intent on the part of the defendant, it held that she had brought the federal action without probable cause to do so. The court rejected the defendant's special defense of reliance on the advice of counsel on the ground that she had failed to disclose relevant information to counsel.

On appeal, the defendant asks us to reverse the judgment of the trial court on five grounds. We agree with the defendant that the court was mistaken in rejecting her special defense. We therefore do not need to address the four other issues that she has raised.[6] See *Shea* v. *Chase Manhattan Bank, N.A.*, 64 Conn. App. 624, 630–31, 781 A.2d 352 (2001).

I

THE FEDERAL LITIGATION

To understand the present litigation, we must first examine the facts underlying the claim that the defen-

---

[4] The defendant also filed, but subsequently abandoned, a special defense calling for the apportionment of damages among her attorneys.

[5] The court found that the plaintiffs had incurred approximately $71,000 in legal fees in the federal proceedings and doubled that award pursuant to General Statutes § 52-568 (1).

[6] Those claims challenged the propriety of the court's holding that the defendant (1) lacked probable cause to initiate the federal action, (2) was liable under the vexatious litigation statute, General Statutes § 52-568 (1), even though she had not acted maliciously, (3) was obligated to pay double damages to the plaintiffs even though she had not acted with malicious intent and (4) was obligated to pay damages to the plaintiffs without a setoff for the damages that had been paid by the defendant's counsel.

dant presented to the federal court concerning ownership rights to a disputed parcel in Wilton. The focus of the defendant's claim was a 1978 conveyance of property to the plaintiffs by her deceased husband in a deed signed by her husband as trustee. The defendant claimed that this deed did not convey good title to the plaintiffs because it lacked the signature of her sister-in-law, a cotrustee.

The defendant's federal action was based on her interpretation of the terms of an irrevocable trust created in 1955 by Leonard Altsheler and Eleanor Altsheler, the defendant's parents-in-law. Although originally funded only with securities, the trust contemplated that it would include "all other property, real and personal, which, from time to time, the [settlors] may place under the operation of the trust . . . ." The trust named the defendant's husband, Richard A. Altsheler, and Marilyn M. Altsheler, her sister-in-law, as cotrustees and principal beneficiaries under the trust. The trust was never recorded.

In 1971, one of the settlors, the defendant's mother-in-law, transferred to the defendant's husband some real property that included the parcel that is the subject of the present litigation. This property was conveyed to "Richard A. Altsheler, trustee," for $175,000. Although the sister-in-law attended the closing and served as a witness to the conveyance, her name was not on the deed. The defendant claims that the words "as trustee" were intended to identify the real property as trust property.

In 1978, after a subdivision, the defendant's husband conveyed the disputed parcel to the plaintiffs by warranty deed, which he signed as Richard A. Altsheler, trustee. In the deed, her husband retained a right of first refusal with respect to any future sale of the parcel

by the plaintiffs. The deed was not signed by the defendant's sister-in-law.[7]

In 1988, more than nine years after this conveyance, the defendant was appointed as the trust's sole trustee because of the death of her husband. She had been named successor trustee in 1985 after the death of her sister-in-law. She was also designated as the trust's sole beneficiary.

Until April, 1997, neither the defendant nor any one else had ever challenged the validity of the plaintiffs' title to the disputed parcel. At that time, when the plaintiffs contemplated sale of the disputed parcel to a third party, a question was raised about whether the defendant might claim a right of first refusal. Relying on the advice of counsel, the defendant did not pursue such a claim.

In the process of consultation with counsel, the defendant noticed that the 1978 deed from her deceased husband to the plaintiffs was signed only by her husband and not by her sister-in-law, whom the trust had named as cotrustee. This discovery triggered her unsuccessful federal court action against the plaintiffs, the third party purchasers from the plaintiffs, and the financial and real estate institutions that had been involved in the sale of the property. She allegedly acted with the advice of counsel throughout the pursuit of her federal litigation.

The federal court dismissed the defendant's action for failing to state a claim on which relief could be granted. Without addressing the merits of the defendant's claim under the law of trusts, the court held that § 47-20 gave the defendant's husband statutory authority to uphold the 1978 conveyance of the property to the plaintiffs. The court stated that because the trust

---

[7] The defendant attended the closing.

had never been memorialized by a "separate duly executed and recorded instrument," the plaintiffs were not bound by any trust related restrictions on the husband's power of conveyance.

## II

## THE PRESENT LITIGATION

At the conclusion of the federal proceedings, the plaintiffs brought the vexatious litigation action that is the subject of this appeal. The trial court held that the plaintiffs had proven that the defendant lacked probable cause to initiate her federal lawsuit. The court awarded damages in accordance with § 52-568 (1) to the plaintiffs.

The defendant's most persuasive contention on appeal from this judgment is that, even if the trial court properly concluded that she did not have probable cause to initiate the federal litigation, she is not liable to the plaintiffs because she established the special defense that she had acted on the advice of counsel. The court addressed and rejected this special defense. Our review of the court's conclusion of law is plenary. *State* v. *Clark*, 255 Conn. 268, 279, 764 A.2d 1251 (2001). We conclude that the judgment in favor of the plaintiffs must be reversed.

Under Connecticut case law, "[a]dvice of counsel is a complete defense to an action of . . . vexatious suit when it is shown that the defendant . . . instituted [her] civil action relying in good faith on such advice, given after a full and fair statement of all facts within [her] knowledge, or which [she] was charged with knowing. The fact that the attorney's advice was unsound or erroneous will not affect the result." (Internal quotation marks omitted.) *Shea* v. *Chase Manhattan Bank*, supra, 64 Conn. App. 630.

The trial court found that the defendant had not been properly advised about the merits of her federal action. It is now conceded that her counsel in the federal litigation had failed to discover § 47-20, which was the basis for the dismissal of the defendant's federal claim. The court nonetheless concluded that the defendant had not established her defense of reliance on counsel because, in its view, the defendant had not disclosed to counsel all the information that counsel needed to give informed advice about the viability of the federal action.[8] We disagree.

A

Counsel's View of Consultation with the Defendant

The record reveals that the defendant's counsel, Michael J. Franco, was an experienced trusts and estates lawyer.[9] He testified that his advice about the merits of the defendant's trust claim was based on documentation that the defendant had supplied to him and his own independent legal research.[10] In his professional view, the 1955 trust required that a conveyance of the disputed party be signed by both cotrustees of the trust.

The defendant had provided for counsel copies of (1) the May 8, 1997 letter from the plaintiffs' attorney stating that the defendant did not have a right of first refusal, (2) the 1978 deed from her husband to the plaintiffs, (3) the 1971 deed from her mother-in-law to her husband that described her husband as trustee and

---

[8] It is not entirely clear that the undisclosed information about matters of relevance to the defendant's federal claim had any relationship to the dismissal of that claim. As noted previously, the federal court based that dismissal solely on the terms of General Statutes § 47-20.

[9] Although the plaintiffs also brought suit against attorney Franco's associate, Tiziana M. Scaccia, the record reveals that Franco made all of the relevant decisions in the federal litigation.

[10] The defendant's counsel also testified that he had searched the land records prior to filing the lawsuit and had not found a record of the 1955 trust. Nonetheless, he still concluded that the disputed parcel was trust property.

(4) the 1955 trust.[11] In addition to supplying these documents, the defendant had advised counsel of the importance of the dates of these various documents and their bearing on her contention that the disputed parcel was part of the trust.[12]

Attorney Franco testified at trial that the defendant had fully complied with his requests for documentation. Moreover, he continued to advise the defendant that her lawsuit had merit even when he was alerted of the existence of § 47-20 by plaintiffs' counsel subsequent to the initiation of the federal action.

Perhaps the trial court discounted the weight of this testimony as an effort by defense counsel to make amends to his client. The court did not, however, make such a finding in its memorandum of decision. Instead, it relied on two specific facts that the defendant, in the court's view, improperly failed to disclose to her counsel.

## B

### The Letter of Resignation

The trial court held that the defendant should have disclosed to counsel a 1960 letter, signed by the defendant's sister-in-law, in which she resigned as trustee of the trust. This letter predated the 1978 conveyance of the disputed parcel to the plaintiffs. In the court's view, access to the resignation letter would have alerted counsel to a significant weakness in the defendant's federal claim. Knowing of this letter, counsel would have recognized that the 1978 conveyance to the plaintiffs did not

---

[11] The original copy of the 1955 trust did not include "Schedule A," which listed the stocks that served as the original funding source for the trust.

[12] The defendant's counsel testified that the defendant told him that "the trust, which was the owner of this property prior to the conveyance to the [plaintiffs], empowered two trustees and that she raised the issue that the deed only contained the signature of one trustee and she questioned the validity of the deed."

require the signature of a cotrustee because there was no longer a cotrustee.

The court discounted the defendant's assertion that she had not been aware of the existence of the resignation letter. The court held, and we agree, that as successor trustee, the defendant had a duty to familiarize herself with trust files maintained by the firm that had long represented the settlors and the trust. See *DeLaurentis* v. *New Haven*, 220 Conn. 225, 258, 597 A.2d 807 (1991).

The court did not, however, take sufficient account of the fact that the resignation letter was not the only relevant document in the trust files.[13] If the defendant had examined the files, as she should have, she would have discovered several documents raising questions about the viability of the 1960 resignation letter. The files contained (1) a 1982 amendment to the 1955 trust that was signed by both the defendant's husband and her sister-in-law as cotrustees, accompanied by a statement expressing their mutual desire to amend the trust, and (2) various stock certificates and federal tax documents for the years 1983 and 1985 that identified the defendant's husband and her sister-in-law as trustees, and a 1978 letter addressed to her husband and her sister-in-law that canceled insurance of the disputed parcel. This documentation would have raised doubts about the effectiveness of the letter of resignation.

We recognize that the trial court made no finding about the significance of the contents of the file as a whole. It would have been good practice for the defen-

---

[13] In the defendant's view, the resignation letter was ineffective as a matter of law because it did not conform to the terms of the trust with regard to resignation. Article four of the 1955 trust set out the guidelines for resignation and required the resigning trustee to provide an accounting and to turn over all property acquired via the trust. In the alternative, the defendant also claimed that the 1960 resignation letter was never properly authenticated at trial. We need not reach those issues.

dant to have asked the court for an articulation. See Practice Book § 60-5. Nonetheless, the plaintiffs have not disputed the fact that each of the contradictory documents was in the trust files. Indeed, they themselves refer to the existence of the unexamined files as evidence of lack of good cause. They cannot now be heard to complain about the significance of the contents of these files.

We are persuaded that counsel could not have been misled by the defendant's failure to disclose the resignation letter. Knowing of the letter, counsel would have been obligated to conduct a comprehensive search of the trust files. If he had done so, he would have discovered the other documents that undermine the significance of the defendant's nondisclosure. Indeed, upon discovery of this contradictory documentation, the defendant's counsel made a deliberate decision that the defendant's federal action should go forward.

We conclude, therefore, that the record does not support the trial court's inference that the defendant's counsel would have reached a different legal conclusion if the letter had been discovered prior to the initiation of the federal action. We know of no authority for the proposition that, before initiating litigation, the defendant had the burden of deciding which of various inconsistent documents accurately described her sister-in-law's trust status at the time of the 1978 conveyance of the disputed parcel.

C

Friendly Relationships with the Plaintiffs

The court also held that the defendant should have alerted her counsel to the fact that her husband and her sister-in-law had been on friendly terms with the plaintiffs throughout their residence at the disputed parcel. The court found it significant that, throughout

that nineteen year period, neither the defendant nor her sister-in-law had challenged the validity of the plaintiffs' title.

Although the court concluded that the long period of acquiescence demonstrated that the defendant lacked probable cause to initiate her federal action, that conclusion is irrelevant with respect to reliance on advice of counsel. The documentation provided to counsel would necessarily have informed counsel of the existence of this time gap. Indeed, the record reveals that, before developing his legal strategy, the defendant's counsel knew that no complaints had been filed previously.[14] At trial, during cross-examination, Franco stated: "[The defendant] didn't withhold that information from me. That was just a conclusion that I had already reached that nobody challenged the title."

The court found it telling, however, that the defendant did not expressly inform counsel of the fact that her sister-in-law had never complained about the absence of her signature in the 1978 conveyance. We disagree. The record at trial did not establish that the sister-in-law, who did not attend the 1978 closing, was aware of the terms of the conveyance to the plaintiffs.

According to the court, the defendant should have informed counsel of the long-standing friendly relationship between the plaintiffs and her husband and her sister-in-law. This is a puzzling conclusion.

At trial, the plaintiffs testified that they had had only a few conversations with the defendant's husband during their residence at the disputed parcel.[15] In the same

---

[14] The defendant's counsel testified at trial that he had analyzed the applicability of the claims of laches, estoppel and adverse possession and had concluded that the defendant should continue the lawsuit based on the fact that the defendant did not become trustee and, therefore, had standing to complain until 1988.

[15] Patricia Verspyck testified that she had had a friendly relationship with the defendant's mother-in-law.

period, according to the record, the plaintiffs had never had a conversation with the defendant's sister-in-law even though for some time she had lived near the plaintiffs.[16]

We disagree, therefore, with the court's conclusion that these nondisclosures materially impaired Franco's ability to assess the merits of the defendant's challenge to the validity of the 1978 deed. Even a friendly relationship would not have diminished the validity of the defendant's contention that the disputed parcel was trust property that had been conveyed in disregard of the terms of the trust.

In sum, we conclude that the trial court improperly determined that the defendant was not entitled to rely on a defense of advice of counsel. None of the information that the court found the defendant to have withheld from counsel had any demonstrated impact on counsel's decision to file the federal action on her behalf.

We conclude, therefore, that the plaintiffs did not establish their claim for damages for vexatious litigation. We empathize with the plaintiffs' understandable frustration with the length and expense of the litigation about their property rights. Nonetheless, the defendant established that she had brought her misguided federal action on the advice of counsel, who concededly should have discovered the dispositive statute before initiating the federal action. It follows that the plaintiffs failed to prove that the federal action was brought without probable cause to do so. See *Ancona* v. *Manafort Bros., Inc.*, 56 Conn. App. 701, 709, 746 A.2d 184, cert. denied, 252 Conn. 953, 749 A.2d 1202 (2000).

The judgment is reversed and the case is remanded with direction to render judgment for the defendant.

In this opinion the other judges concurred.

---

[16] They described the sister-in-law as a recluse allegedly suffering from a mental illness.