# BERNHARD-THOMAS BUILDING SYSTEMS, LLC *v.* CHET DUNICAN ET AL.
## (SC 17899)

Rogers, C. J., and Norcott, Katz, Palmer and Vertefeuille, Js.

Argued November 27, 2007—officially released April 22, 2008

*Alan R. Spirer,* for the appellant (plaintiff).

*Richard A. Roberts,* with whom, on the brief, was *Jane S. Bietz,* for the appellee (defendant Jacques J. Parenteau).

*Opinion*

VERTEFEUILLE, J. The dispositive issue in this certified appeal is whether the Appellate Court properly concluded that a prejudgment remedy application is not a civil action for purposes of a subsequent claim for the tort of vexatious litigation. We agree that such an application is not a civil action for purposes of a subsequent claim for vexatious litigation, and accordingly, we affirm the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following facts and the relevant procedural history. "The plaintiff [Bernhard-Thomas Building Systems, LLC] employed [the named defendant] Chet Dunican[1] from April, 2002, until February, 2004, as an at-will

[1] Dunican is not a party to this appeal. Consequently, we refer to Jacques J. Parenteau, an attorney licensed to practice law in Connecticut, as the defendant in this case.

employee. On December 19, 2003, the defendant [Jacques J. Parenteau, an attorney representing Dunican] filed an application for a prejudgment remedy on behalf of Dunican against the plaintiff in the amount of $3.5 million [in anticipation of a wrongful discharge litigation against the plaintiff]. The court, *Leuba, J.*, held a hearing over the course of several days and on March 10, 2004, denied the application. Specifically, the court stated that it had applied the probable cause standard and concluded that Dunican had failed to sustain his burden with respect to any of his claims. . . .

"The plaintiff commenced the present action and alleged that it had expended substantial attorney's fees in response to Dunican's application. The plaintiff filed a nine count complaint against both Dunican and the defendant.[2] Counts five and six of the complaint alleged that the defendant had violated General Statutes § 52-568 (1) and (2).[3] Count seven set forth a cause of action for common-law vexatious litigation [against the defendant]. Count eight alleged an abuse of process by the defendant. These counts were based on the defendant's filing of the application for a prejudgment remedy and sending a copy of the application to the Weitz Company, the plaintiff's largest client, in order 'to vex and trouble the [p]laintiff' and 'to attempt to pressure the [p]laintiff to pay money' to Dunican. The plaintiff further alleged

---

[2] In its operative complaint, the plaintiff alleged nine counts, the first four of which were directed against Dunican, and the last five counts of which were directed against the defendant. The ninth count of the operative complaint alleged that the defendant had violated the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. The trial court struck that count, and the plaintiff did not challenge that decision on appeal.

[3] General Statutes § 52-568 provides: "Any person who commences and prosecutes any civil action or complaint against another, in his own name or the name of others, or asserts a defense to any civil action or complaint commenced and prosecuted by another (1) without probable cause, shall pay such other person double damages, or (2) without probable cause, and with a malicious intent unjustly to vex and trouble such other person, shall pay him treble damages."

that the defendant and Dunican indicated that if [the plaintiff] refused to pay Dunican money, Dunican would reveal embarrassing information regarding 'members' of the plaintiff and their families.

"The defendant moved to strike the counts against him by a motion filed August 24, 2005. On January 18, 2006, the court, *Hon. David W. Skolnick*, judge trial referee, granted the motion and struck the counts against the defendant. With respect to the claims of statutory and common-law vexatious litigation, the court concluded that an application for a prejudgment remedy did not constitute a civil action that terminated in favor of the plaintiff, a necessary element of the tort of vexatious litigation. With respect to the cause of action for abuse of process, the court stated that the allegations contained in the complaint failed to establish that the defendant's actions 'were in furtherance of a primary purpose other than to secure a prejudgment remedy. Rather, these allegations merely show that an ulterior motive existed.'

"Pursuant to Practice Book § 10-44,[4] the defendant, on February 7, 2006, moved for judgment on the stricken counts against him. The court granted this motion, without objection, on February 27, 2006." *Bernhard-Thomas Building Systems, LLC* v. *Dunican*, 100 Conn. App. 63, 65–67, 918 A.2d 889 (2007). The plaintiff's appeal to the Appellate Court followed.

In that appeal, the plaintiff claimed that the trial court improperly had granted the defendant's motion to strike four counts of its operative complaint. Specifically, the plaintiff asserted that the trial court had struck counts

---

[4] Practice Book § 10-44 provides in relevant part that if a "party whose pleading or count thereof has been . . . stricken fails to file a new pleading within [fifteen days after the granting of the motion to strike], the judicial authority may, upon motion, enter judgment against said party on such stricken [pleading] . . . ."

five through seven of the plaintiff's complaint after "improperly conclud[ing] that the application filed by the defendant on behalf of Dunican for a prejudgment remedy did not constitute a 'prior civil action,' which is an element of vexatious litigation." Id., 68. Additionally, the plaintiff claimed that the trial court improperly had struck the eighth count of its amended complaint because "the court improperly concluded that the claims for abuse of process were not predicated on 'specific misconduct intended to cause specific injury outside the normal contemplation of private litigation.' " Id., 76–77.

The Appellate Court affirmed the decision of the trial court in all respects. Id., 65. Specifically, it concluded that the trial court properly had struck counts five through seven of the plaintiff's complaint because the plaintiff had failed to allege an element of the tort of vexatious litigation because the defendant's application for a prejudgment remedy did not commence a civil action. Id., 76. The court further concluded that the trial court properly had struck the plaintiff's claim for abuse of process because the operative complaint had "failed to allege that the defendant used legal process, the application for a prejudgment remedy, primarily to accomplish a purpose for which it is not designed." Id., 78. This certified appeal followed.[5]

As a preliminary matter, we set forth the applicable standard of review. "The standard of review in an appeal challenging a trial court's granting of a motion to strike is well established. A motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court. As a

---

[5] We granted the plaintiff's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly conclude that a prejudgment remedy application is not a civil action for purposes of a subsequent claim for the tort of vexatious litigation?" *Bernhard-Thomas Building Systems, LLC* v. *Dunican*, 282 Conn. 912, 924 A.2d 137 (2007).

result, our review of the court's ruling is plenary. . . . We take the facts to be those alleged in the [pleading] that has been stricken and we construe the [pleading] in the manner most favorable to sustaining its legal sufficiency." (Internal quotation marks omitted.) *Sullivan* v. *Lake Compounce Theme Park, Inc.*, 277 Conn. 113, 117–18, 889 A.2d 810 (2006).

The plaintiff contends that the Appellate Court improperly concluded that an application for a prejudgment remedy is not a civil action for the purpose of a subsequent claim for the tort of vexatious litigation. Specifically, the plaintiff asserts that a writ of summons and complaint, which are used to commence a civil action, and an application for a prejudgment remedy "are more alike than they are distinct," and that the substantive import of a civil action and an application for a prejudgment remedy are equivalent. The defendant responds that the relevant statutory scheme, in addition to a number of Connecticut cases, makes it clear that an application for a prejudgment remedy is in fact not a civil action for purposes of a subsequent claim for the tort of vexatious litigation. We agree with the defendant.

We begin with a brief review of the law of vexatious litigation in this state. The cause of action for vexatious litigation permits a party who has been wrongfully sued to recover damages. *Verspyck* v. *Franco*, 81 Conn. App. 646, 647, 841 A.2d 267 (2004), rev'd on other grounds, 274 Conn. 105, 874 A.2d 249 (2005); see 8 S. Speiser, C. Krause & A. Gans, American Law of Torts (1991) § 28:20, p. 113 ("The action for malicious prosecution[6] is a recognition of the right of an individual to be free from unjustifiable litigation . . . [and] has been

---

[6] The elements of the torts of malicious prosecution and vexatious litigation "are identical . . . ." *Rioux* v. *Barry*, 283 Conn. 338, 340 n.3, 927 A.2d 304 (2007). The difference is that malicious prosecution is based on a former criminal prosecution, while the vexatious litigation is based on a prior civil action. Id.

extended into the field of wrongful initiation of civil suits. . . . The purpose of the action is to compensate a wronged individual for damage to his reputation and to reimburse him for the expense of defending against the unwarranted action." [Citation omitted.]). In Connecticut, the cause of action for vexatious litigation exists both at common law and pursuant to statute. Both the common law and statutory causes of action "[require] proof that a civil action has been prosecuted . . . ." (Internal quotation marks omitted.) *QSP, Inc.* v. *Aetna Casualty & Surety Co.*, 256 Conn. 343, 361, 773 A.2d 906 (2001). Additionally, to establish a claim for vexatious litigation at common law, one must prove "want of probable cause, malice and a termination of suit in the plaintiff's favor." *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, 281 Conn. 84, 94, 912 A.2d 1019 (2007). The statutory cause of action for vexatious litigation exists under § 52-568,[7] and "differs from a common-law action only in that a finding of malice is not an essential element, but will serve as a basis for higher damages." Id. In the context of a claim for vexatious litigation, "the defendant lacks probable cause if he lacks a reasonable, good faith belief in the facts alleged and the validity of the claim asserted." *DeLaurentis* v. *New Haven*, 220 Conn. 225, 256, 597 A.2d 807 (1991).

Because the prosecution of a civil action is a prerequisite to the filing of a viable vexatious litigation claim, we next consider what is required for the initiation of a civil action in this state. General Statutes § 52-45a provides the following procedure for initiating a civil action: "Civil actions shall be commenced by legal process consisting of a writ of summons or attachment, describing the parties, the court to which it is returnable, the return day, the date and place for the filing of an appearance and information required by the Office

---

[7] See footnote 3 of this opinion for the text of § 52-568.

of the Chief Court Administrator. The writ shall be accompanied by the plaintiff's complaint. The writ may run into any judicial district and shall be signed by a commissioner of the Superior Court or a judge or clerk of the court to which it is returnable."[8] See Practice Book § 8-1 (a) ("Mesne process in civil actions shall be a writ of summons or attachment, describing the parties, the court to which it is returnable and the time and place of appearance, and shall be accompanied by the plaintiff's complaint. Such writ may run into any judicial district or geographical area and shall be signed by a commissioner of the superior court or a judge or clerk of the court to which it is returnable.").

That civil actions must be commenced with a signed writ of summons or attachment is a matter of significance. As this court previously has opined, "[t]he subject of signing and issuing process in civil actions is one of consequence. Such signing is one of the processes of law by which a man may be deprived of his liberty and property. It is carefully guarded. It is not to be done indiscriminately. . . . The signing of a writ by a person as a commissioner of the Superior Court is not a mere ministerial act. . . . The canons of professional ethics require that a lawyer decline to institute an action if he is convinced that it is intended to harass or injure the opposite party or work an oppression or wrong." (Citations omitted.) *Sharkiewicz* v. *Smith,* 142 Conn. 410, 412–13, 114 A.2d 691 (1955); see *Feldmann* v. *Sebastian,* 261 Conn. 721, 729, 805 A.2d 713 (2002) (noting that "writ of summons 'shall be signed by a commissioner of the Superior Court or a judge or clerk of the court to which it is returnable' "); *Hillman* v. *Greenwich,* 217 Conn. 520, 524–25, 587 A.2d 99 (1991) (This court noted that "[a] summons is part of a citation . . .

[8] A writ of summons issues in a civil action wherein a prejudgment remedy is not sought. A writ of attachment issues if the plaintiff has been granted a prejudgment remedy by court order.

[which] is a command to a duly authorized officer to summon the [defendant] . . . to appear in court on a specific day to answer the [complaint]. . . . [T]he citation, *signed by competent authority*, is the warrant which bestows upon the officer to whom it is given for service the power and authority to execute its command. . . . Without it, the officer would be little more than a deliveryman." [Citations omitted; emphasis added; internal quotation marks omitted.]); *Brunswick* v. *Inland Wetlands Commission*, 25 Conn. App. 543, 547, 596 A.2d 463 (1991) (noting that due process of law requires that writ commencing action be signed "by . . . a . . . commissioner of the Superior Court . . . or a . . . clerk of the court to which it is returnable" [internal quotation marks omitted]), rev'd on other grounds, 222 Conn. 541, 610 A.2d 1260 (1992); *Sargent* v. *Capital Airlines, Inc.*, 96 Conn. App. 320, 325, 901 A.2d 55 (2006) (referring to "fatal [defect]" in case in which plaintiff failed to sign both writ of summons and complaint).

The Appellate Court considered the importance of a signed writ of summons in the initiation of a civil action in *Raynor* v. *Hickock Realty Corp.*, 61 Conn. App. 234, 763 A.2d 54 (2000). In *Raynor*, the plaintiff alleged that she had been injured in a fall on the defendant's property in June, 1995. Id., 235. Twenty-three months later she sought and obtained a prejudgment order attaching the defendant's property. Id., 235–36. In February, 1998, the plaintiff served signed copies of the writ of summons and complaint on the defendant. Id., 236. Thereafter, the defendant successfully moved for summary judgment against the plaintiff due to the plaintiff's failure to commence her action within two years of the date of her alleged injury, as was required by the applicable statute of limitations. Id. The trial court rejected the plaintiff's claim in her objection to the motion for summary judgment that she had instituted her claim within

the two year statute of limitations period. The trial court concluded that "prejudgment remedy documents are not the equivalent of a writ of summons and complaint, and do not commence an action." Id. On appeal, the Appellate Court agreed. Specifically, the Appellate Court ruled that service of an unsigned writ of summons and complaint does not have the effect of commencing a civil action, and that "[t]he plaintiff's failure to sign the writ of summons and complaint is fatal to her claim." Id., 240. The court expressly declined the plaintiff's invitation to overlook the fact that the summons and complaint accompanying the prejudgment remedy documents were unsigned, noting that it was unwilling to "ignore an omission of that nature." Id.

We next consider some fundamental principles regarding our law of prejudgment remedies. "The purpose of the prejudgment remedy of attachment is security for the satisfaction of the plaintiff's judgment, *should* he obtain one. . . . It is primarily designed to forestall any dissipation of assets by the defendant and to bring [those assets] into the custody of the law to be held as security for the satisfaction of such judgment as the plaintiff *may recover* . . . ." (Emphasis in original; internal quotation marks omitted.) *Marlin Broadcasting, LLC* v. *Law Office of Kent Avery*, 101 Conn. App. 638, 646–47, 922 A.2d 1131 (2007). It is well established that "[t]he adjudication made by the court on the application for a prejudgment remedy is not part of the proceedings ultimately to decide the validity and merits of the plaintiff's cause of action." *E. J. Hansen Elevator, Inc.* v. *Stoll*, 167 Conn. 623, 628–29, 356 A.2d 893 (1975). A trial judge's duty in a prejudgment remedy hearing is to determine whether probable cause exists to sustain the validity of a party's claim. "If the court, upon consideration of the facts before it . . . finds that the plaintiff has shown probable cause that such a judgment will be rendered in the matter in the plaintiff's

favor in the amount of the prejudgment remedy sought and finds that a prejudgment remedy securing the judgment should be granted, the prejudgment remedy applied for shall be granted as requested or as modified by the court." General Statutes § 52-278d (a). This review of probable cause is "extremely limited." *William Beazley Co.* v. *Business Park Associates, Inc.*, 34 Conn. App. 801, 805, 643 A.2d 1298 (1994).

The process of obtaining a prejudgment remedy is different from the process of commencing a civil action. Individuals seeking a prejudgment remedy must attach an *unsigned* writ, summons and complaint to the following documents: (1) a prejudgment remedy application; (2) an affidavit stating facts sufficient to show that probable cause exists that a judgment will be rendered in the action in favor of the plaintiff; (3) a form of order that a hearing be held; and (4) a form of summons for the prejudgment remedy hearing. See General Statutes § 52-278c (a).

With this background in mind, we now consider whether an application for a prejudgment remedy constitutes a civil action for purposes of a subsequent claim of vexatious litigation. In addition to setting forth the required format of an application for a prejudgment remedy, § 52-278c (b) further provides in relevant part that the applicant represent that he or she "is about to commence an action against" the defendant. As the Appellate Court correctly observed, this language suggests that "the prejudgment remedy application is something that precedes, and, therefore, is not the equivalent of, the commencement of a civil action. See, e.g., *Cahaly* v. *Benistar Property Exchange Trust Co.*, 268 Conn. 264, 272–73, 842 A.2d 1113 (2004) (under clear language of § 52-278c [b], application for prejudgment remedy is not stand-alone pleading); *E. J. Hansen Elevator, Inc.* v. *Stoll*, [supra, 167 Conn.] 628 (prejudgment remedy auxiliary to cause of action alleged) . . . see also 2 E.

Stephenson, Connecticut Civil Procedure (3d Ed. 2002) § 104, p. 2 ('[p]rejudgment remedies are ancillary to the main action for damages and cannot exist without such action')." (Citation omitted.) *Bernhard-Thomas Building Systems, LLC* v. *Dunican,* supra, 100 Conn. App. 75.

The language of General Statutes § 52-278j (a) also suggests that an application for a prejudgment remedy is not a civil action, providing as follows: "If an application for a prejudgment remedy is granted but the plaintiff, within thirty days thereof, does not serve and return to court the writ, summons and complaint for which the prejudgment remedy was allowed, the court shall dismiss the prejudgment remedy." This statute speaks of the process of commencing the civil action as a distinct proceeding that follows the acquisition of a prejudgment remedy if the latter is to remain viable beyond thirty days. Thus, the language of § 52-278j (a) suggests that obtaining a prejudgment remedy is not equivalent to commencing a civil action. Similarly, § 52-278j (c) provides that "[a]n application for a prejudgment remedy or a prejudgment remedy which is granted *but not served* may be withdrawn in the same manner as a civil cause of action." (Emphasis added.) This statutory language also refers to prejudgment remedies and civil actions as separate proceedings.

Finally, and perhaps most significantly, as we previously have noted, § 52-278c requires that an *unsigned* writ, summons and complaint accompany the required prejudgment remedy application and related documents. Both § 52-45a and Practice Book § 8-1 (a), however, require a *signed* writ to commence a civil action. Our review of these prejudgment remedy statutes and Connecticut law setting forth the requirements for bringing a civil action strongly indicates that a prejudgment remedy is not a civil action under Connecticut law.

A recent decision by this court further buttresses our conclusion. In *Feldmann* v. *Sebastian,* supra, 261 Conn.

721, this court drew a clear distinction between prejudgment remedy applications and civil actions. In *Feldmann*, the plaintiff sought to recover damages from the defendants, members of the Mashantucket Pequot Tribal Nation (tribe), after the plaintiff's decedent had been fatally injured when a motorcycle that he was operating collided with a car operated by a tribe member. Id., 723. As members of the tribe, the defendants received tribal incentive payments, which are monthly stipends that the tribe pays to its members. Id. The plaintiff sought to attach these payments and have them turned over to a receiver, but this court ruled that the type of prejudgment remedy sought by the plaintiff was not authorized under General Statutes § 52-278a (d). Id., 723–28. Additionally, this court rejected the plaintiff's argument that such a remedy was permissible under General Statutes § 52-504, which provides in relevant part that a judge may grant an application for receivership only when an "action is brought to or pending in the superior court . . . ." See *Feldmann* v. *Sebastian*, supra, 261 Conn. 728–29. The court in *Feldmann* emphasized that, although the plaintiff had served the defendants with an unsigned writ of summons along with her prejudgment remedy application, she had not served the defendants with a signed writ of summons, the vehicle "by which a civil action is commenced." Id., 729–30. The court concluded that an application for a prejudgment remedy *"is not equivalent to a writ of summons and complaint, [and] does not commence an action."* (Emphasis added.) Id., 730.

We conclude that an application for a prejudgment remedy does not commence a civil action for purposes of a subsequent claim for vexatious litigation. First, there is no service of the requisite *signed* writ of summons. Additionally, the language of the prejudgment remedy statutes, § 52-278a et seq., in several instances previously set forth herein, makes it clear that proceed-

ings for prejudgment remedy applications and civil actions are separate and distinct, with a prejudgment remedy application generally preceding the filing of the civil action. Finally, in addition to the differences regarding the process for initiating these two legal proceedings, the purpose of filing a civil action is fundamentally different from the purpose of obtaining a prejudgment remedy. A prejudgment remedy application is brought as a prelude to the filing of a civil action, and is meant to determine whether security should be provided for any judgment ultimately recovered by the plaintiff if he or she is successful on the merits of the civil action. A civil action, in contrast, resolves the merits of the parties' claims, and can be filed irrespective of whether the plaintiff was successful in his or her prior pursuit of a prejudgment remedy. Accordingly, we conclude that the plaintiff cannot base its claim for vexatious litigation on the defendant's filing of an unsuccessful prejudgment remedy application. We therefore affirm the judgment of the Appellate Court.

The plaintiff claims that this court has permitted "claims for vexatious litigation in situations where the underlying proceeding was not a civil action" and that, consequently, we should permit vexatious litigation claims to be based on unsuccessful prejudgment remedy applications. Specifically, the defendant cites *Zeller* v. *Consolini*, 235 Conn. 417, 667 A.2d 64 (1995) (claim for vexatious litigation permitted based on zoning application and Superior Court appeal) and *DeLaurentis* v. *New Haven*, supra, 220 Conn. 225 (vexatious litigation claim permitted based on administrative hearing) for the proposition that vexatious litigation claims are permitted based on proceedings other than civil actions. We disagree with the plaintiff because these cases are distinguishable.

In *Zeller* v. *Consolini*, supra, 235 Conn. 418–20, the plaintiffs, real estate developers who proposed to build

a shopping mall on land that they had acquired, sought damages for tortious interference with a business relationship and vexatious litigation after the defendants, members of an unincorporated association that had opposed the development of the mall, attempted to change the zone of the land on which the plaintiffs planned to build. After the zone change application was denied, the defendants appealed, unsuccessfully, to the Superior Court. Id., 420. The defendants filed a motion to strike the plaintiffs' complaint, asserting that the plaintiffs "[were] not . . . [parties] to the zoning application proceedings or to the subsequent judicial appeal therefrom." Id., 423. The trial court granted the motion, despite the fact that the plaintiffs had intervened in both the commission proceedings and the appeal. This court reversed the decision of the trial court, ruling that the plaintiffs were in fact parties to the zoning proceedings and the subsequent judicial appeal, and that the trial court's dismissal of the defendants' appeal from the zone change decision constituted a termination of those proceedings in the plaintiffs' favor. Id., 425–26. *Zeller* does not support a cause of action for vexatious litigation in the present case for two reasons. First, there was a civil action brought to court in that the defendants had appealed from the denial of their zoning application to the Superior Court and lost that appeal. Second, the issue in *Zeller* turned on the plaintiffs' party status and not on whether the zone change proceedings and the subsequent Superior Court appeal constituted a civil action.

In *DeLaurentis*, the plaintiff, the former chairperson of the New Haven parking authority commission, sought damages from the defendants, the city of New Haven and its then mayor, for, inter alia, vexatious litigation arising out of the mayor's having instituted, and then abandoned, administrative proceedings against the plaintiff to remove him from his public

office. *DeLaurentis* v. *New Haven*, supra, 220 Conn. 227. This court rejected the defendants' argument that, because the removal proceeding at issue was administrative in nature, it did not constitute a "civil action" and thus could not give rise to a claim for vexatious litigation. Id., 248. Specifically, this court concluded that the plaintiff was not barred from bringing a vexatious litigation action simply because the proceeding "did not take place in a courtroom." Id., 249. The court emphasized that these removal proceedings, which were prescribed in the New Haven city charter, "might have resulted in depriving [the plaintiff] of his position as a parking authority commissioner." Id. Thus, the administrative proceeding could have resulted in a final determination of the plaintiff's job status. A prejudgment remedy hearing, however, results in no final determination of any rights of the parties but is merely a preliminary proceeding, based on probable cause, that generally is followed by a civil action that results in a final determination of the rights of the parties.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.