******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DIAMOND 67, LLC *v.* DEREK V. OATIS ET AL.
(AC 37736)

Alvord, Sheldon and Mihalakos, Js.

*Argued April 18—officially released August 23, 2016*

(Appeal from Superior Court, judicial district of Hartford, Complex Litigation Docket, Wahla, J. [motion to cite in]; Miller, J. [motions for summary judgment; judgment].)

*Richard P. Weinstein*, with whom, on the brief, was *Sarah Black Lingenheld*, for the appellant (plaintiff).

*James F. Sullivan*, for the appellees (named defendant et al.).

*Joseph J. Arcata III*, with whom, on the brief, was *Daniel P. Scapellati*, for the appellee (defendant James D. Batchelder).

*Jared M. Alfin* and *Cristin E. Sheehan*, with whom, on the brief, was *Robert W. Cassot*, for the appellee (defendant Amy Blaymore-Paterson).

*Reed A. Slatas*, for the appellee (defendant Ann Letendre).

*Jeffrey G. Schwartz*, for the appellee (defendant John Summers).

*Christopher P. Kriesen*, for the appellee (defendant Deborah Wilson).

*Opinion*

SHELDON, J. The plaintiff, Diamond 67, LLC, appeals from the summary judgment rendered by the trial court in favor of the defendants, Derek V. Oatis, Lobo & Associates, LLC, James D. Batchelder, Glenn Montigny, Amy Blaymore-Paterson, Ann Letendre, John Summers, and Debra Wilson. The plaintiff sought to develop a Home Depot store in the town of Vernon that the defendants, a group of concerned citizens and their attorneys, opposed for environmental reasons. Certain defendants, allegedly acting with the support of their codefendants, thus sought to intervene in various administrative and mandamus actions between the plaintiff and the Planning and Zoning Commission of the Town of Vernon (planning and zoning commission). Thereafter, the plaintiff brought this action, sounding in vexatious litigation, claiming that the defendants' conduct in intervening or supporting other defendants' interventions in the planning and zoning actions, and their appeals from the denials thereof, had delayed it in obtaining the necessary final approval from the planning and zoning commission. The plaintiff claimed that because those appeals delayed the approval of the Home Depot development project by the planning and zoning commission until after the deadline agreed to for that purpose in the plaintiff's agreement with Home Depot, Home Depot abandoned the development project to the plaintiff's great financial loss. The trial court granted all of the defendants' motions for summary judgment on the ground that the plaintiff could not establish that the defendants' actions had caused Home Depot to abandon the development project, or thus to sustain any compensable losses. The plaintiff appeals, claiming that genuine issues of material fact remain as to the causation of damages. The defendants argue that summary judgment was appropriately rendered, and raise various alternative grounds for affirmance as well. We agree with the plaintiff that summary judgment was improperly granted, and decline to affirm the court's judgment on any of the alternative grounds proposed by the defendants.

The facts of this case are closely related to those at issue in three other cases: *Batchelder* v. *Planning & Zoning Commission*, 133 Conn. App. 173, 34 A.3d 465, cert. denied, 304 Conn. 913, 40 A.3d 319 (2012), *Diamond 67, LLC* v. *Planning & Zoning Commission*, 127 Conn. App. 634, 15 A.3d 1112, cert. denied, 301 Conn. 915, 19 A.3d 1261 (2011), and *Diamond 67, LLC* v. *Planning & Zoning Commission*, 117 Conn. App. 72, 978 A.2d 122 (2009). We set forth the following relevant facts in *Batchelder*. "In 2003, [the plaintiff] applied to the Vernon inland wetlands commission (wetlands commission) for a wetlands permit and to [the planning and zoning commission] for site plan approval and related permits in connection with its proposed development

[of a Home Depot]. *Diamond 67, LLC* v. *Planning & Zoning Commission*, [supra, 75]. In 2007, after the wetlands commission issued [the plaintiff] a wetlands permit, [the plaintiff] filed a renewed application for approval of a site plan and related permits with [the planning and zoning commission]. Id. While the renewed application was pending, [the plaintiff] brought a mandamus action, claiming that [the planning and zoning commission] had failed to act on the 2003 application [by] the time limits set forth in General Statutes § 8-3 (g) and General Statutes (Rev. to 2003) § 8-7d. Id., 75–76. [The plaintiff] argued that it was therefore entitled to have the 2003 application automatically approved. Subsequently, [the planning and zoning commission] denied [the plaintiff's] renewed application, and [the plaintiff] filed an administrative appeal to the trial court from the denial, in addition to the mandamus action. Id., 76.

"During the pendency of the mandamus action and the administrative appeal, Montigny filed motions, pursuant to [General Statutes] § 22a-19 (a),[1] to intervene in each proceeding. Id. Batchelder, however, did not seek to intervene in either proceeding. On October 17, 2007, the court, *Sferrazza, J.*, granted Montigny's motion to intervene in the administrative appeal but denied his motion to intervene in the mandamus action. Id.

"In November, 2007, [the plaintiff and the planning and zoning commission] engaged in mediation and settlement discussions, from which Montigny and Batchelder were excluded. Id., 77. The discussions led to a possible agreement on a new site plan, which was scheduled to be discussed at a public forum held by [the planning and zoning commission] on November 19, 2007. Id. Prior to November 19, 2007, [Montigny and Batchelder] petitioned, pursuant to § 22a-19, to intervene in the public forum, but [the planning and zoning commission] denied their petitions. On December 4, 2007, [Montigny and Batchelder] filed [an] administrative appeal from the denial of their requests to intervene in the public forum.

"FIRST TWO APPEALS [ENTITLED *DIAMOND 67, LLC* v. *PLANNING & ZONING COMMISSION*]

"Following the public forum, [the planning and zoning commission] voted to approve the settlement, and [the plaintiff] filed a motion in the mandamus action for judgment in accordance with the settlement agreement. [Id.] On February 13, 2008, before the court took any action on [the plaintiff's] motion, Montigny filed a renewed motion to intervene in the mandamus action, claiming that the court was required to consider the environmental impact of the new plan in its review of the settlement agreement, and that he therefore was entitled to intervene pursuant to § 22a-19. Id.

"On February 14, 2008, Judge Sferrazza held a hearing on [the plaintiff's] motion for judgment in accordance with the settlement agreement. Id. At the hearing, Judge Sferrazza denied Montigny's renewed motion to intervene and rendered judgment in accordance with the terms of the settlement agreement. Id., 77–78. Montigny appealed from that judgment, claiming that the trial court improperly denied his renewed motion to intervene. Id., 79. [On September 15, 2009, in] *Diamond 67, LLC* v. *Planning & Zoning Commission*, supra, 117 Conn. App. 84, this court reversed the judgment of the trial court, concluding that 'the substance of the settlement . . . focused on the issues of the administrative appeal and not solely on the issues of the mandamus action.' This court held that Judge Sferrazza 'improperly denied Montigny's renewed motion to intervene and failed to conduct a hearing compliant with [General Statutes] § 8-8 (n).' Id., 85. Accordingly, this court remanded the case with direction to grant Montigny's motion to intervene and to 'conduct a hearing compliant with § 8-8 (n) to review the settlement, in which Montigny is entitled to participate for the purpose of raising environmental issues.' Id.

"On October 21, 2009, *Hon. Lawrence C. Klaczak*, judge trial referee, held a hearing pursuant to the remand order. Montigny, who appeared through counsel but did not personally attend, was granted intervenor status. *Diamond 67, LLC* v. *Planning & Zoning Commission*, supra, 127 Conn. App. 642 and n.6. Batchelder did not seek to intervene. Montigny's counsel, however, failed to present any evidence concerning environmental issues. Id., 643. On December 3, 2009, Judge Klaczak approved the settlement proposal and rendered judgment in accordance with its terms. Id., 643–44.

"Montigny also appealed from that judgment. See id., 637. Montigny claimed, in part, that Judge Klaczak improperly approved the settlement proposal because he, Montigny, did not consent to it. Id., 650. On April 5, 2011, this court released its decision in *Diamond 67, LLC* v. *Planning & Zoning Commission*, supra, 127 Conn. App. 634, affirming the judgment of the trial court. Id., 651. This court concluded, in relevant part, that 'Montigny abdicated his right of approval by abandoning his responsibility to raise environmental issues as an intervenor pursuant to § 22a-19' at the remand hearing. Id.

### "[THIRD APPEAL, ENTITLED *BATCHELDER* v. *PLANNING & ZONING COMMISSION*]

"Meanwhile, on February 25, 2010, [the planning and zoning commission] moved for summary judgment in the administrative appeal filed by [Montigny and Batchelder] from [the planning and zoning commission's] denial of their petitions to intervene in the public forum

held on November 19, 2007. On June 10, 2010, Judge Sferrazza granted [the planning and zoning commission's] motion for summary judgment as to Montigny's claim on the basis of collateral estoppel and dismissed Batchelder's appeal as moot. Judge Sferrazza concluded that Judge Klaczak's ruling, rendered on December 3, 2009, approving the settlement proposal following the remand from *Diamond 67, LLC* v. *Planning & Zoning Commission*, supra, 117 Conn. App. 85, disposed of [Montigny's and Batchelder's] claims." (Footnotes altered.) *Batchelder* v. *Planning & Zoning Commission*, supra, 133 Conn. App. 176–79.

In the third appeal of these related cases, Batchelder and Montigny appealed from Judge Sferrazza's rendering of summary judgment. On January 24, 2012, this court held that the appeal was moot: "Boiled down to its essence, [Montigny and Batchelder] were provided the opportunity to raise environmental concerns at the October 21, 2009 hearing held by Judge Klaczak, but failed to do so. They were offered, but failed to avail themselves of, the very thing they sought to attain by seeking to intervene in the November 19, 2007 public forum. Accordingly, we cannot afford [Montigny and Batchelder] any practical relief, and, therefore, their appeal is moot." Id., 182.

### THE PRESENT APPEAL

The gravamen of the current action is the plaintiff's claim that the defendants' conduct in intervening or supporting their codefendants' interventions in the administrative and mandamus actions described previously caused a delay in its obtaining the necessary final approvals for the Home Depot development project from the planning and zoning commission, which ultimately led Home Depot to abandon the project.

The plaintiff had entered into a sale-leaseback agreement with Home Depot on March 9, 2006, in contemplation of its development of the Home Depot store. Under the terms of that agreement, Home Depot's duty to construct the Home Depot was conditioned on the plaintiff's obtaining all "final approvals," including all permits, licenses, variances, and approvals necessary for the construction and operation of the development, by the deadline of March 9, 2010. The contract provided that approvals would not be considered "final approvals" thereunder until they "[are] received and are valid, irrevocable, unqualified and unconditioned (except for such qualifications and/or conditions that are acceptable to Home Depot in its sole and absolute discretion), and are no longer subject to appeal or litigation . . . ."

The defendants objected to the proposed development for environmental reasons. In the petitions to intervene filed by Montigny and Batchelder, the defendants claimed, inter alia, that the proposed site for the Home Depot was located three hundred feet from the

Walker Reservoir, a source of public drinking water, and that the construction and operation of the Home Depot was "unreasonably likely to result in the unreasonable disruption, pollution, impairment and destruction of the natural resources and hydrology of the immediate area . . . ."

On January 30, 2013, the plaintiff filed its third amended complaint (complaint), which was the operative complaint at the time summary judgment was rendered. The forty-two count complaint made identical allegations against each defendant, claiming that their interventions in the administrative action (*Diamond 67, LLC* v. *Planning & Zoning Commission*, Superior Court, judicial district of Tolland, Docket No. CV-07-4007637S) and mandamus action (*Diamond 67, LLC* v. *Planning & Zoning Commission*, Superior Court, judicial district of Tolland, Docket No. CV-07-4007520S) constituted both common-law vexatious litigation and statutory vexatious litigation for which double and treble damages should be awarded under General Statutes § 52-568.[2] In particular, the plaintiff alleged that Batchelder and Montigny, who were represented by Oatis, an employee or principal of the law firm of Lobo & Associates, LLC, had pursued interventions in those actions, and that Blaymore-Paterson, Letendre, Summers, and Wilson had "actively participated, supported, plotted, and planned to bring, pursue and maintain" those interventions. In their answers, the defendants asserted various special defenses, including reliance on the advice of counsel, the bar of the statute of limitations, and the *Noerr-Pennington* doctrine. See part II C of this opinion.

All of the defendants filed motions for summary judgment between April 4 and 11, 2014. The defendants claimed that the plaintiff could not establish any of the elements of vexatious litigation, which requires a plaintiff to prove that the defendant prosecuted a civil action against it, that terminated in its favor, without probable cause. *Bernhard-Thomas Building Systems, LLC* v. *Dunican*, 286 Conn. 548, 553–54, 944 A.2d 329 (2008). In order to prevail on a claim of common-law vexatious litigation or to receive treble damages under § 52-568, the plaintiff must also prove that the defendants acted with malice. Id. Certain defendants also argued that summary judgment should be granted on the basis of certain of their special defenses.

The defendants also asserted that they were entitled to summary judgment because there was no genuine issue of material fact that their alleged conduct had not caused the plaintiff any compensable loss or injury. To that end, the defendants presented evidence that Home Depot had abandoned its development project in Vernon not because of the defendants' attempts to intervene in the plaintiff's actions against the planning and zoning commission, but because of an economic down-

turn. For that reason, the defendants argued, Home Depot refused to consider a certificate issued by the State Traffic Commission (traffic commission) to be a "final approval" under the terms of the parties' contract due to certain unacceptable conditions contained therein.[3] In support of this argument, the defendants submitted correspondence between the plaintiff and Home Depot to show that the two had failed to come to an agreement on how to deal with the conditions imposed by the traffic commission. The correspondence showed that although Home Depot was initially under the impression that the plaintiff was willing to contribute $500,000 toward satisfying the conditions set forth in the traffic commission's letter, the plaintiff was not willing to do so. Instead, it explained, in a letter to Home Depot, that "[w]e are not interested in making a cash contribution . . . . However, we [are] interested in the possibility of our doing the work [required by the traffic commission] for $500,000 . . . ."

On June 18, 2008, Home Depot wrote a letter to a representative of the plaintiff, stating, "The [traffic commission] Report sets forth several conditions which require road widening and other offsite improvements [which] were not anticipated by Home Depot, are overly broad and are not currently within its construction budget. . . . Home Depot intends on filing an appeal of the [traffic commission] Report . . . ." On March 8, 2010, the plaintiff requested an extension of the deadline to obtain all final approvals. In a letter dated March 19, 2010, Home Depot declined the plaintiff's request for an extension of the deadline. In that letter, Home Depot also notified the plaintiff that, because the plaintiff had failed to obtain all final approvals for the project by the deadline of March 9, 2010, it was exercising its contractual right to terminate the contract by selling the property. The March 19, 2010 letter did not state which approvals Home Depot did not consider to be "final approvals" under the terms of its contract with the plaintiff.

On April 25, 2014, the plaintiff filed an opposition to the defendants' motions for summary judgment. The plaintiff argued in its opposition that it had in fact obtained all final approvals for the project by the contract deadline except for final approval from the planning and zoning commission, which remained pending only because of the appeals being pursued by the defendants. The plaintiff argued that approval by the planning and zoning commission did not become final until 2012, after the March 9, 2010 deadline, when our Supreme Court denied certification to appeal in *Batchelder* v. *Planning & Zoning Commission*, supra, 133 Conn. App. 173. It also contended that the traffic commission certificate was a final approval, as "[a]ll approvals are subject to conditions of compliance." The plaintiff also maintained that, even if it was unable to establish causation as to the loss of the Home Depot contract, the

defendants' conduct had caused it to incur losses in the form of "extensive litigation costs," to which it would still be entitled if it could otherwise establish the elements of its vexatious litigation claims.

In opposition to the defendants' motions for summary judgment, the plaintiff filed an affidavit from Richard P. Hayes, Jr., the individual tasked by the plaintiff with obtaining all final approvals for the project. Hayes averred: "As of March 9, 2010, which was the final date for securing approvals, the plaintiff had secured all necessary approvals except for the final approval from the planning and zoning commission which was subject to an appeal brought by the defendant, Montigny. . . . The Montigny appeal was from a decision by Judge Klaczak in December, 2009 at which time the defendants knew that there was no evidence to support the allegations of the defendants' petition for intervention, no experts to support the allegations therein and that, in fact said petition contained false allegations in regard to Walker Reservoir East being a source of public water supply. . . . But for the appeal, the plaintiff would have had an enforceable contract with Home Depot which was worth multiple millions of dollars to the plaintiff. . . . Further, at all times and notwithstanding a claim to the contrary, Home Depot did not take an appeal of the STC approval. . . . If in fact an STC appeal had been taken, the plaintiff easily could have resolved same by merely agreeing to absorb the costs incidental to the improvements mandated by the STC. . . . Plaintiff incurred professional fees, legal fees and litigation costs in defense of defendants' petitions, inclusive of costs for defense of appeals and preparation for hearing ordered upon remand at which [the defendants] failed to present any evidence in support of their petitions."

The court, *Dubay, J.*, held a hearing on May 12, 2014, on all of the motions for summary judgment. At that hearing, counsel for the plaintiff argued that the STC had granted it a final approval, and that the STC conditions did not need to be accepted by Home Depot in order to constitute a final approval under the contract. On May 23, 2014, however, Judge Dubay recused himself from the case and the matter was reassigned.

A new hearing was held on September 28, 2014, before *Miller, J.*, after Judge Dubay had recused himself. On February 24, 2015, the court granted all of the motions for summary judgment, explaining its ruling as follows: "The parties do not agree about many of the facts at issue in this case, but there are some critical and uncontested facts which are not in dispute:

"1. One of [the] plaintiff's major responsibilities, under its contract with Home Depot, was to obtain all necessary permits so that the development could take place.

"2. Ultimately, [the] plaintiff obtained all of the necessary permits, including one from the [traffic commission], and there was no regulatory obstacle, once that happened, to the development of the site.

"3. Home Depot thereafter informed [the] plaintiff that it would not proceed with the development because the [traffic commission] imposed conditions on the permit which Home Depot found to be unacceptable. The development agreement, therefore, did not go forward. . . .

"The defendants raised several legal grounds for granting summary judgment in their favor. The court finds that one of those arguments so clearly requires a finding in favor of all the defendants that the court need only consider what was said in favor of and against that argument in granting all of the pending motions for summary judgment.

"No plaintiff in a tort action can prevail unless he or she can prove that the alleged wrongful conduct of the defendant was a proximate cause of his or her injuries. The record in this case makes it entirely clear that Home Depot did not go forward on its deal with the plaintiff because the permit which [the] plaintiff obtained from the [traffic commission] contained conditions which Home Depot refused to accept. [The] plaintiff's contention that its agreement with Home Depot was 'self-executing,' which is not supported in the record, is irrelevant to this inquiry. Home Depot, rightly or wrongly, decided, after it received the unpalatable [traffic commission] permit, that it would not go forward with its plans for the store in Vernon. The store did not get built, and all of [the] plaintiff's alleged damages flow from that decision. There is nothing in the record in this case which even suggests that Home Depot walked away from this deal because of any act by any of the defendants. There is certainly no evidence from any Home Depot employee—or anyone else— which supports any other conclusion.

"There is therefore no evidence before this court which would allow a conclusion that the defendants' activities were vexatious. Under these circumstances, [the] plaintiff cannot, as a matter of law, prevail, and the court does not consider the other arguments made by the defense counsel in support of their motions."

The plaintiff claims that the trial court improperly rendered summary judgment in favor of all of the defendants. The defendants argue first that summary judgment was properly rendered and, second, that the judgment can be affirmed on several alternative grounds.

I

The plaintiff claims that summary judgment was improperly rendered because the facts found by the

trial court were not supported by the record and, in any event, were not dispositive of the plaintiff's claims. In particular, the plaintiff argues that the trial court ignored the fact that the planning and zoning permit was not issued until after the contract deadline and that the defendants' actions were the cause of that delay. Moreover, the plaintiff argues that Home Depot's reasons for abandoning the development project were not dispositive of its vexatious litigation claims, for even if the defendants' challenged conduct did not cause the loss of the Home Depot deal, it was still entitled to recover damages from them for the costs it incurred in defending against the defendants' baseless claims. The defendants disagree, arguing that summary judgment was properly rendered because the plaintiff cannot establish causation. The defendants assert that Home Depot did not want to complete the development because of a downturn in the economy. According to the defendants, they presented uncontroverted evidence that Home Depot was dissatisfied with the traffic commission conditions, and that was the reason that it did not pursue the development. Certain defendants also argue that the plaintiff cannot assert that it is entitled to attorney's fees and costs because it did not specifically plead that it was seeking to recover such damages.

"Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . A material fact has been defined adequately and simply as a fact which will make a difference in the result of the case. . . . The test is whether a party would be entitled to a directed verdict on the same facts. . . . Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue . . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § [17-45]. . . . The movant has the burden of showing the nonexistence of such issues but the evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist. . . . To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts . . . which contradict those stated in the movant's affidavits and documents." (Citations omitted; internal quotation marks omitted.) *Hammer* v. *Lumberman's Mutual Casualty Co.*, 214 Conn. 573, 578–79, 573 A.2d 699 (1990).

"We begin with a brief review of the law of vexatious

litigation in this state. The cause of action for vexatious litigation permits a party who has been wrongfully sued to recover damages. *Verspyck* v. *Franco*, 81 Conn. App. 646, 647, 841 A.2d 267 (2004), rev'd on other grounds, 274 Conn. 105, 874 A.2d 249 (2005); see 8 S. Speiser, C. Krause & A. Gans, American Law of Torts (1991) § 28:20, p. 113 ('The action for malicious prosecution is a recognition of the right of an individual to be free from unjustifiable litigation . . . [and] has been extended into the field of wrongful initiation of civil suits. . . . The purpose of the action is to compensate a wronged individual for damage to his reputation and to reimburse him for the expense of defending against the unwarranted action.' . . . In Connecticut, the cause of action for vexatious litigation exists both at common law and pursuant to statute. Both the common law and statutory causes of action [require] proof that a civil action has been prosecuted . . . . Additionally, to establish a claim for vexatious litigation at common law, one must prove want of probable cause, malice and a termination of suit in the plaintiff's favor. . . . The statutory cause of action for vexatious litigation exists under § 52-568, and differs from a common-law action only in that a finding of malice is not an essential element, but will serve as a basis for higher damages. . . . In the context of a claim for vexatious litigation, the defendant lacks probable cause if he lacks a reasonable, good faith belief in the facts alleged and the validity of the claim asserted." (Citations omitted; footnotes omitted; internal quotation marks omitted.) *Bernhard-Thomas Building Systems*, *LLC* v. *Dunican*, supra, 286 Conn. 553–54.

We agree with the plaintiff that Home Depot's reasons for abandoning the project were not material to its claim for attorney's fees and costs in defending against the defendants' alleged vexatious litigation. "A material fact has been defined adequately and simply as a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) *Hammer* v. *Lumberman's Mutual Casualty Co.*, supra, 214 Conn. 578. The reason that Home Depot failed to continue with the development project is immaterial to the plaintiff's claims for attorney's fees and costs, which depend upon the plaintiff's having established the elements of vexatious litigation, i.e., whether the defendants prosecuted a civil action, without probable cause, and that the action was terminated in favor of the plaintiff. *Bernhard-Thomas Building Systems*, *LLC* v. *Dunican*, supra, 286 Conn. 553–54. The plaintiff also would be required to prove malice to prevail on its common-law claims or to obtain treble damages for its statutory claims. See id., 554.

Oatis, Montigny, and Lobo & Associates, LLC, argue that the plaintiff did not specifically plead that it was seeking attorney's fees and costs and did not present evidence in support of such a claim. Our Supreme Court

has said that attorney's fees are includable as compensatory damages in a claim of common-law vexatious litigation. *Vandersluis* v. *Weil*, 176 Conn. 353, 360, 407 A.2d 982 (1978). The plaintiff's complaint alleged that the defendants "pursued intervention" in the planning and zoning action, "asserted groundless claims and persisted in appeals," for the purpose of "prevent[ing] the development of the site as a Home Depot," and that the defendants' actions caused the plaintiff to "[sustain] millions of dollars in damage, all to its special loss." Having properly claimed money damages for losses allegedly incurred as a result of the defendants' pursuit of vexatious litigation against it, the plaintiff was not required to plead more specifically, in the absence of a proper request to revise, that among the particular losses for which it allegedly incurred such damages were expenses for attorney's fees and nontaxable costs to defend itself against the defendants' baseless claims. See *Sanford* v. *Peck*, 63 Conn. 486, 491, 27 A. 1057 (1893) ("complaint must contain averments which fairly and reasonably apprise" defendant of claims to be made); see also *Broadnax* v. *New Haven*, 270 Conn. 133, 173–74, 851 A.2d 1113 (2004) ("[W]e long have eschewed the notion that pleadings should be read in a hypertechnical manner. Rather, [t]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . [T]he complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties. . . . Our reading of pleadings in a manner that advances substantial justice means that a pleading must be construed reasonably, to contain all that it fairly means, but carries with it the related proposition that it must not be contorted in such a way so as to strain the bounds of rational comprehension." [Internal quotation marks omitted.]).

Oatis, Montigny, and Lobo & Associates, LLC, also argue that the plaintiff did not submit evidence, as part of its opposition to the defendants' motions for summary judgment, of any bills or invoices establishing that it had incurred losses in defending itself against the interventions. We first note that the plaintiff was not required to establish that it incurred legal fees and costs in response to the defendants' motions for summary judgment because the defendants never submitted evidence establishing that there was no genuine issue of material fact as to whether the plaintiff incurred legal fees and costs. *Marinos* v. *Poirot*, 308 Conn. 706, 712, 66 A.3d 860 (2013) ("[w]hen documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue" [internal quotation marks omitted]). Nevertheless, the plaintiff submitted the Hayes affidavit, which stated

that the plaintiff incurred damages in the form of "legal fees and litigation costs in defense of defendants' petitions, inclusive of costs for defense of appeals and preparation for hearing ordered upon remand,"[4] thereby establishing that a genuine issue of fact remains as to whether the defendants caused the plaintiff to incur such costs and fees.

Thus, a genuine issue of material fact exists as to whether the plaintiff can establish its claim that the defendants' conduct caused it to incur fees and costs for which it is entitled to recover money damages. Accordingly, the trial court improperly rendered summary judgment on that ground.

## II

We next turn to the alternative grounds for affirmance asserted by various defendants. "Our Supreme Court in *Grady* v. *Somers*, 294 Conn. 324, 349–50 n.28, 984 A.2d 684 (2009), acknowledged that circumstances exist where although the trial court did not reach a dispositive issue and the defendant did not raise that issue in a preliminary statement of issues as an alternative ground for affirmance pursuant to Practice Book § 63-4 (a) (1), a court can still affirm the judgment of a trial court so long as the plaintiff is not prejudiced or unfairly surprised by the consideration of the issue." (Footnote omitted.) *Bouchard* v. *Deep River*, 155 Conn. App. 490, 496, 110 A.3d 484 (2015). "Where the trial court reaches a correct decision but on [alternate] grounds, this court has repeatedly sustained the trial court's action if proper grounds exist to support it. . . . [W]e . . . may affirm the court's judgment on a dispositive alternate ground for which there is support in the trial court record." (Citations omitted; internal quotation marks omitted.) *Pequonnock Yacht Club, Inc.* v. *Bridgeport*, 259 Conn. 592, 599, 790 A.2d 1178 (2002). "We also have held that '[i]f the alternate issue was not ruled on by the trial court, the issue must be one that the trial court would have been forced to rule in favor of the appellee. Any other test would usurp the trial court's discretion.' " *Vine* v. *Zoning Board of Appeals*, 281 Conn. 553, 568–69, 916 A.2d 5 (2007).

The first alternative ground, raised by all of the defendants, is that by intervening in the plaintiff's actions against the planning and zoning commission, they did not initiate or procure any civil suit against the plaintiff. The second alternative ground, raised by Wilson, Oatis, Montigny, Lobo & Associates, LLC, and Letendre, is that the plaintiff cannot establish that the civil suits in which they intervened terminated in its favor against them. The third alternative ground, raised by Summers, Batchelder, Oatis, Montigny, Lobo & Associates, LLC, Letendre, Blaymore-Paterson, and Wilson, is that they are entitled to prevail on their special defenses under the *Noerr-Pennington* doctrine. The fourth alternative ground, raised by Summers, Batchelder, Oatis, Mon-

tigny, Lobo & Associates, LLC, and Wilson, is that the defendants are entitled to prevail on their special defenses of reliance on the advice of counsel. Fifth and finally, Wilson, Letendre, Oatis, Lobo & Associates, LLC, and Montigny claim that we can affirm the rendering of summary judgment in this case because, as to each of their challenged interventions, there is no genuine dispute that they pursued all claims they raised and prosecuted in such interventions with probable cause. We conclude that none of these alternative grounds for affirmance can appropriately be resolved in the defendants' favor on summary judgment, and thus decline to affirm the judgment on any such ground.

We address each alternative ground in turn.

A

The first alternative ground for affirmance, raised by all of the defendants, is that they did not initiate or procure any suit against the plaintiff. However, although "[b]oth the common law and statutory causes of action [for vexatious litigation] [require] proof that a civil action has been prosecuted"; (internal quotation marks omitted) *Bernhard-Thomas Building Systems, LLC* v. *Dunican*, supra, 286 Conn. 554; it is not necessary for the defendant to have initiated the civil action. "Most courts now agree with the Restatement (Second) of Torts, § 680, which permits liability for vexatious '*initiation, continuation or procurement* of civil proceedings against another before an administrative board that has power to take action adversely affecting the legally protected interests of the other.' " (Emphasis added.) *DeLaurentis* v. *New Haven*, 220 Conn. 225, 248, 597 A.2d 807 (1991).

In *Bhatia* v. *Debek*, 287 Conn. 397, 948 A.2d 1009 (2008), our Supreme Court explained that initiation of a suit was not an element of vexatious litigation. "We have stated that the elements of malicious prosecution and common-law vexatious litigation essentially are identical. . . . Although the required showing for both torts essentially is the same, there is a slight difference in that a plaintiff in a malicious prosecution action must show initiation of the proceedings by the defendant. In our cases discussing vexatious litigation claims, we have overlooked this difference because, ordinarily, it is not significant for purposes of considering a claim for vexatious litigation. The difference is evident only in our precedent addressing malicious prosecution claims. Compare *Vandersluis* v. *Weil*, supra, [176 Conn. 356] (characterizing vexatious litigation and malicious prosecution as having three identical elements—want of probable cause, malice and termination of action in plaintiff's favor), with *McHale* v. *W.B.S. Corp.*, [187 Conn. 444, 447, 446 A.2d 815 (1982)].

"We have summarized the required showing for [malicious prosecution and vexatious litigation] as follows:

To establish either cause of action, it is necessary to prove want of probable cause, malice and a termination of suit in the plaintiff's favor. . . . In a cause of action for malicious prosecution, the plaintiff additionally must establish that the defendant caused the proceeding to be instituted. . . . This requirement is due to the fact that, unlike a vexatious litigation claim, in which the underlying civil action was filed either by the defendant herself, acting pro se, or by an attorney acting on behalf of the defendant, in a malicious prosecution action, a public official, acting on behalf of the state, institutes the criminal action against the malicious prosecution plaintiff. It is, therefore, more problematic in a malicious prosecution action, as opposed to an action for vexatious litigation, for the plaintiff to connect the defendant with the actual institution of the underlying action. In accordance with the indirect connection between the underlying action and the defendant in a malicious prosecution action, we have specified the initiation of the underlying action as a separate element in malicious prosecution cases, as opposed to vexatious litigation cases, in which the plaintiff is not required to establish that the defendant initiated the underlying action." (Citations omitted; internal quotation marks omitted.) *Bhatia* v. *Debek*, supra, 287 Conn. 405–406.

The court's reasoning in *Bhatia* follows the language of the Restatement (Second) of Torts, § 674, which further provides, in comment (a) thereto: "The person who initiates civil proceedings is the person who sets the machinery of the law in motion, whether he acts in his own name or in that of a third person . . . ." In the context of a malicious prosecution claim, our Supreme Court has said, "All who knowingly procure, direct, aid, abet or assist in, or subsequently adopt [malicious prosecution, false imprisonment or abuse of process] are liable as joint tortfeasors for the damage done by the malicious prosecution, false imprisonment or abuse of process." *McGann* v. *Allen*, 105 Conn. 177, 185, 134 A. 810 (1926).

Here, the plaintiff submitted evidence establishing that there is a genuine issue of material fact as to each defendant's participation in the initiation, procurement, and/or continuation of their respective interventions in the plaintiff's administrative and mandamus actions against the planning and zoning commission. The plaintiff claimed that the defendants acted together as part of a group known as Smart Growth for Vernon to prevent its development of the Home Depot store. In particular, the plaintiff submitted e-mails among the defendants that detailed their joint efforts to pursue the challenged interventions. One of those e-mails, from Summers to Wilson, Montigny, Batchelder, and Blaymore-Paterson, discusses (1) the proposed hiring of Oatis to represent the group in connection with the planned building of a Home Depot store in Vernon; (2) the fact that Smart Growth for Vernon, as an unincorporated

entity, could not sign the retainer agreement with Oatis on their behalf; and (3) the fact that they would need to hire a hydrogeologist, a civil engineer, and a traffic engineer to oppose the Home Depot project. Accordingly, genuine issues of a material fact remain as to each individual defendant's role in the initiation, continuation, and/or procurement of the actions in which they sought to intervene.[5]

B

Certain defendants argue that because the plaintiff ultimately settled its mandamus action against the planning and zoning commission, it cannot establish that that action terminated in its favor. On this score, the defendants cite to our case law that states, "When a lawsuit ends in a negotiated settlement or compromise, it does not terminate in the plaintiff's favor and therefore will not support a subsequent suit for vexatious litigation. . . . This conclusion recognizes that the law favors settlements, which conserve scarce judicial resources and minimize the parties' transaction costs, and avoids burdening such settlements with the threat of future litigation." (Citations omitted.) *Blake* v. *Levy*, 191 Conn. 257, 264, 464 A.2d 52 (1983). The plaintiff argues, however, that the operative proceedings at issue are the defendants' interventions in the mandamus and administrative actions, not the mandamus or administrative actions themselves. We agree with the plaintiff.

"Courts have taken three approaches to the termination requirement. The first, and most rigid, requires that the action have gone to judgment resulting in a verdict of acquittal, in the criminal context, or no liability, in the civil context. The second permits a vexatious suit action even if the underlying action was merely withdrawn so long as the plaintiff can demonstrate that the withdrawal took place under circumstances creating an inference that the plaintiff was innocent, in the criminal context, or not liable, in the civil context. The third approach, while nominally adhering to the favorable termination requirement, in the sense that any outcome other than a finding of guilt or liability is favorable to the accused party, permits a malicious prosecution or vexatious suit action whenever the underlying proceeding was abandoned or withdrawn without consideration, that is, withdrawn without either a plea bargain or a settlement favoring the party originating the action.

"Notwithstanding our recitation of the term favorable termination . . . in *Vandersluis* and a few other cases . . . we have never required a plaintiff in a vexatious suit action to prove a favorable termination either by pointing to an adjudication on the merits in his favor or by showing affirmatively that the circumstances of the termination indicated his innocence or nonliability, so long as the proceeding has terminated without consideration. . . . Instead, we have always viewed the issue of whether the prior outcome was favorable to the

plaintiff as relevant to the issue of probable cause. . . .

"Two concerns underlie the requirement of successful termination. The first is the danger of inconsistent judgments if defendants use a vexatious suit or malicious prosecution action as a means of making a collateral attack on the judgment against them or as a counterattack to an ongoing proceeding. . . . The second is the unspoken distaste for rewarding a convicted felon or otherwise guilty party with damages in the event that the party who instituted the proceeding did not at that time have probable cause to do so." (Citations omitted; emphasis omitted; footnotes omitted; internal quotation marks omitted.) *DeLaurentis* v. *New Haven*, supra, 220 Conn. 250–52. "The question we must resolve, then, is whether the [termination of the prior action] implicates either of these concerns." *Bhatia* v. *Debek*, supra, 287 Conn. 410.

The defendants incorrectly assume that the settlement between the plaintiff and the planning and zoning commission is the pertinent "termination" at issue. Certain defendants intervened in actions in which the plaintiff and the planning and zoning commission were the original parties. As discussed in part II B of this opinion, the plaintiff submitted evidence demonstrating a factual issue as to whether the other defendants participated in pursuing those interventions. The defendants thus had a claim, pursuant to § 22a-19, in the dispute between the plaintiff and the planning and zoning commission. As such, in order for the defendants to prevail on summary judgment on the ground that the prior action did not terminate in the plaintiff's favor, they must have been successful in pursuing those claims. However, only the mandamus action between the plaintiff and the planning and zoning commission was settled—not the defendants' claims. The defendants were not successful in their claims, and, in fact, never even had their environmental concerns considered before the settlement was approved and the permit that the plaintiff was seeking was eventually issued. Accordingly, the defendants are not entitled to summary judgment on this ground.

C

Summers, Batchelder, Oatis, Montigny, Lobo & Associates, LLC, Letendre, Paterson, and Wilson also claim that we can affirm the summary judgment rendered by the trial court on the ground that their conduct in pursuing the interventions was speech protected under the *Noerr-Pennington* doctrine.

"In short, the *Noerr-Pennington* doctrine shields from the Sherman [Antitrust] Act [15 U.S.C. § 1 et seq.] a concerted effort to influence public officials regardless of intent or purpose. . . . The United States Supreme Court has reasoned that it would be destructive of rights of association and of petition to hold

that groups with common interests may not, without violating the antitrust laws, use the channels and procedures of state and federal agencies and courts to advocate their causes and points of view respecting resolution of their business and economic interests vis-a-vis their competitors. . . .

"The *Noerr-Pennington* doctrine has evolved from its antitrust origins to apply to a myriad of situations in which it shields individuals from liability for petitioning a governmental entity for redress. [A]lthough the *Noerr-Pennington* defense is most often asserted against antitrust claims, it is equally applicable to many types of claims which [seek] to assign liability on the basis of the defendant's exercise of its first amendment rights. . . . For example, *Noerr-Pennington* has been recognized as a defense to actions brought under the National Labor Relations Act, 29 U.S.C. § 151 et seq. . . . state law claims of tortious interference with business relations . . . federal securities laws . . . and wrongful discharge claims. . . .

"Although the *Noerr-Pennington* doctrine provides broad coverage to petitioning individuals or groups, its protection is not limitless. In *Eastern Railroad Presidents Conference* v. *Noerr Motor Freight, Inc.*, [365 U.S. 127, 144, 81 S. Ct. 523, 5 L. Ed. 2d 464 (1961)], the United States Supreme Court, albeit in dictum, established a sham exception to the general rule, stating: There may be situations in which a publicity campaign, ostensibly directed toward influencing governmental action, is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor and the application of the Sherman Act would be justified. . . . In short, petitioning activity is not protected if such activity is a mere sham or pretense to interfere with no reasonable expectation of obtaining a favorable ruling. . . . In *Professional Real Estate Investors, Inc.* v. *Columbia Pictures Industries, Inc.*, 508 U.S. 49, 60–62, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993), the court outlined a two part test to define sham litigation. First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. Id., 60. Second, the court should focus on whether the baseless lawsuit conceals an attempt to interfere directly with the business relationships of a competitor . . . through the use [of] the governmental process— as opposed to the outcome of that process—as an anticompetitive weapon . . . ." (Citations omitted; internal quotation marks omitted.) *Zeller* v. *Consolini*, 59 Conn. App. 545, 550–52, 758 A.2d 376 (2000). "Essentially, then, a sham involves a defendant whose activities are not genuinely aimed at procuring favorable governmental action in any form." Id., 552.

"Activities found to be a sham involve actions rife with abusive intent and absent any indicia of success.

Factors present in sham litigation include, but are not limited to, the presence of repetitive litigation (although one action may constitute a sham under certain conditions), deliberate fraud, supplying false information, and whether lower courts have stated or implied that the action is frivolous or objectively baseless and whether they have dismissed it out of hand." Id., 555.

The defendants claim that the *Noerr-Pennington* doctrine protects them from liability for exercising their first amendment right to petition the government for redress of claims, including in local zoning matters. Moreover, they argue that the sham exception does not apply to their conduct in this matter.

The plaintiff submitted evidence that the defendants were aware that, contrary to their assertions throughout the proceedings, Walker Reservoir was not a source of drinking water. The verified petition to intervene, signed by Batchelder and Oatis on November 16, 2007, stated that "[Diamond 67's conduct] is likely to cause unreasonable pollution, impairment or destruction of the Tankerhoosen Watershed, the Tankerhoosen River, Gage's Brook, and the Walker's Reservoir, a source of water for the citizens of Connecticut and the surrounding ecosystem, its vegetation and wildlife, which rely upon the integrity of this area [as] a necessary habitat and a source of up-[stream] water." Likewise, the verified petition in the mandamus action, which was signed by Montigny on September 21, 2007, also asserted that Walker Reservoir was a source of public drinking water. However, e-mails from Montigny and Letendre on November 13, 2009, to the other defendants clearly stated that such allegations were inaccurate. The e-mail from Letendre stated, "I'm concerned. Who drafted the petition? Walker Reservoir is NOT a source of public water supply. . . . The petition was drafted in 2007—why didn't we see it and pick this error up sooner?" Furthermore, an e-mail from Montigny said, "I specifically remember that we had a discussion about the 'source of drinking water' statement at the time I signed one of these petitions. When I read the petition in [Oatis'] office, I mentioned that I did not think Walker Reservoir was used for drinking water, but was still a very important part of the ecosystem of the area. You said you would check that out and amend this. What I'm seeing . . . is, it was not amended."

In addition, the plaintiff submitted evidence that the defendants were aware that they needed to obtain an expert to prevail on their environmental claims, yet failed to do so.

On the basis of the foregoing evidence, a genuine issue of material fact remains as to whether the sham exception applies in this case.[6]

### D

The next alternative ground for affirmance, advanced

by Summers, Batchelder, Oatis, Montigny, Lobo & Associates, LLC, and Wilson, is that they relied on the advice of counsel.

"Advice of counsel is a complete defense to an action of malicious prosecution or vexatious suit when it is shown that the defendant made the complaint in a criminal action or instituted his civil action relying in good faith on such advice, given after a full and fair statement of all facts within his knowledge, or which he was charged with knowing. The fact that the attorney's advice was unsound or erroneous will not affect the result." *Vandersluis* v. *Weil*, supra, 176 Conn. 361. In support of their motions for summary judgment, Batchelder, Montigny, and Summers submitted affidavits averring that they had relied in good faith on the advice of Oatis, as their counsel, after providing him with full and fair statements of all facts within their knowledge, and that they believed that the Home Depot project would have a deleterious effect on the environment.[7] Similarly, Oatis submitted an affidavit attesting that Montigny had made a full and fair disclosure to him of all material facts within his knowledge.

The plaintiff contends that a disputed factual issue remains as to whether the defendants acted in good faith in relying on the advice of counsel. We agree that the evidence submitted by the plaintiff and discussed in part II C of this opinion was sufficient to raise a genuine issue of material fact as to whether the defendants acted in good faith. The defendants' conclusory statements in their affidavits were insufficient to establish that this fact was not in dispute.

E

Finally, certain defendants argue that the plaintiff cannot establish want of probable cause. "[A] defendant lacks probable cause if he lacks a reasonable, good faith belief in the facts alleged and the validity of the claim asserted." (Internal quotation marks omitted.) *Bernhard-Thomas Building Systems, LLC* v. *Dunican*, supra, 286 Conn. 554. As discussed previously, the plaintiff presented evidence that, for years, the defendants pursued interventions in the administrative action and mandamus action despite never having retained an expert to substantiate their environmental concerns. Moreover, the plaintiff submitted evidence that certain defendants filed verified pleadings in those actions, which asserted that the Walker Reservoir was a source of public drinking water, even though they were aware that it was not a source of public drinking water. Accordingly, genuine issues of material fact remain as to whether the defendants lacked probable cause, and this is therefore not an appropriate alternative ground for affirmance.

The judgment is reversed and the case is remanded with direction to deny the defendants' motions for sum-

mary judgment and for further proceedings according to law.

In this opinion the other judges concurred.

[1] General Statutes § 22a-19 provides in relevant part: "(a) (1) In any administrative, licensing or other proceeding, and in any judicial review thereof made available by law, the Attorney General, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state.

"(2) The verified pleading shall contain specific factual allegations setting forth the nature of the alleged unreasonable pollution, impairment or destruction of the public trust in air, water or other natural resources of the state and should be sufficient to allow the reviewing authority to determine from the verified pleading whether the intervention implicates an issue within the reviewing authority's jurisdiction. For purposes of this section, 'reviewing authority' means the board, commission or other decision-making authority in any administrative, licensing or other proceeding or the court in any judicial review. . . ."

[2] General Statutes § 52-568 provides: "Any person who commences and prosecutes any civil action or complaint against another, in his own name or the name of others, or asserts a defense to any civil action or complaint commenced and prosecuted by another (1) without probable cause, shall pay such other person double damages, or (2) without probable cause, and with a malicious intent unjustly to vex and trouble such other person, shall pay him treble damages."

[3] On May 8, 2008, the traffic commission sent the plaintiff a letter, stating that a "certificate will not be issued by this office until: (1) the Traffic Investigation Report has been recorded on the municipal land records . . . (2) a bond, sufficient to cover the full cost of implementing the required improvements, has been posted with the Department of Transportation . . . and (3) an easement has been secured for the Town of Vernon along the north side of Reservoir Road . . . ." Enclosed with the letter was a copy of a Traffic Investigation Report, which recommended that the traffic commission issue a certificate to the plaintiff "referenced to the following conditions," and then listing twenty-nine conditions, including the three conditions specifically mentioned in the cover letter.

[4] Blaymore-Paterson, joined by Montigny, Oatis, Lobo & Associates, LLC, and Batchelder, filed a motion to strike this portion of the affidavit as vague. The court denied the motion to strike.

[5] For the same reasons, Blaymore-Paterson's alternative ground that she was not involved in the underlying action and Letendre's alternative ground on the basis of the statute of limitations is not appropriately resolved at summary judgment.

[6] For the same reasons, there is a genuine issue of material fact as to whether the defendants acted with malice, and we decline to affirm the judgment on this alternative ground asserted by Oatis, Montigny, and Lobo & Associates, LLC.

[7] The record does not reflect that Wilson submitted a similar affidavit.